## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELINE KEUNG, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br>    v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC d/b/a XFINITY,<br>,<br><br>                Defendant. | **Case No.** _2:23-cv-5110_<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacqueline Keung ("Plaintiff") brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant Comcast Cable Communications, LLC, d/b/a Xfinity ("Xfinity" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to her, which are based on personal knowledge:

## <u>NATURE OF THE CASE</u>

1.      Xfinity is an American telecommunications business segment and division of Comcast Corporation used to market consumer cable television, internet, telephone, and wireless services. The brand was first introduced in 2010; prior to that, these services were marketed primarily under the Comcast name.

2.      During the course of its operations, Xfinity acquired, collected, stored, utilized, and derived a benefit from Plaintiff's and Class Members' names, contact information, social security numbers, dates of birth, secret questions and answers, usernames and passwords (collectively, the "PII").

3.      Xfinity therefore, owed and otherwise assumed non-delegable statutory, regulatory, and common law duties and obligations, including to keep Plaintiff's and Class Members' PII confidential, safe, secure, and protected from the type of unauthorized access, disclosure, and theft that occurred in this matter.

4.      This duty arises based upon the parties' relationship and because it is foreseeable that the exposure of PII to unauthorized persons—and especially cybercriminals with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private matters.

5.      This harm manifests in several ways, as the exposure of a person's PII through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives.

6.      On or around October 10, 2023, one of Xfinity's software providers, Citrix, announced a vulnerability in one of its products used by Xfinity. At the time Citrix made this announcement, it released a patch to fix the vulnerability. Citrix issued additional mitigation guidance on October 23, 2023. However, Xfinity subsequently discovered that prior to mitigation, between October 16 and October 19, 2023, there was unauthorized access to Xfinity's internal systems—which Xfinity concluded was a result of this vulnerability (the "Data Breach").

7.      On or around December 6, 2023, Xfinity concluded that the PII included usernames and hashed passwords; for some customers, other information was also included, such as names, contact information, last four digits of social security numbers, dates of birth and/or secret questions and answers.

8.      Xfinity only began notifying affected customers on or around December 18, 2023, and reported to the Maine Attorney General's Office that more than *35 million* customers' PII was affected.

9.      Plaintiff brings this class action on behalf of customers of Xfinity whose PII was accessed and exposed to unauthorized third parties during the Data Breach.

10.     Plaintiff, on behalf of herself and the Class as defined herein, bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory and injunctive relief, seeking actual, compensatory, punitive, and nominal damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and relief.

11.     As a direct and proximate result of Xfinity's inadequate data security, its breach of its duty to handle PII with reasonable care, and its failure to maintain the confidentiality of customers' information, Plaintiff's and Class Members' PII has been accessed by hackers and exposed to an untold number of unauthorized individuals.

12.     Plaintiff and Class Members are now at a significantly increased risk of fraud, identity theft, intrusion of their privacy, and similar forms of criminal mischief, which risk may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy protecting themselves, to the extent possible, from these crimes.

13.     To recover from Defendant for these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, along with injunctive relief requiring Defendant to, at minimum: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

## PARTIES

**A.    Plaintiff**

14.    Plaintiff Jacqueline Keung is an adult individual who is a citizen of Florida and currently resides in Broward County, Florida.  Since Plaintiff is, or has been a customer of Xfinity, Plaintiff's PII was maintained within Defendant's networks and servers.

15.    On or around December 20, 2023, Plaintiff received an email notice from Xfinity informing her of the Data Breach.

16.    In response and as a result of the Data Breach, Plaintiff and Class Members have spent significant time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity. Further, Plaintiff has replaced a compromised credit card, signed up for Experian, and extended her fraud alerts.

17.    Plaintiff and Class Members suffered damages as a result of the failures of Defendant to adequately protect the sensitive information entrusted to it, including, without limitation, experiencing fraud or attempted fraud, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of their personal information, and other economic and non-economic harm.  Plaintiff and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identity theft.

18.    As a result of the Data Breach, Plaintiff and Class Members have been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending and is not speculative given the highly sensitive nature of the PII compromised by the Data Breach.

**B.      Defendant**

19.      Defendant Comcast Cable Communications, LLC is a Delaware limited liability company with its principal place of business located at Comcast Center, 1701 JFK Boulevard, Philadelphia, Pennsylvania 19103. Defendant Comcast Cable Communications, LLC is registered to do business with the Pennsylvania Department of State.

## JURISDICTION AND VENUE

20.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Defendant.

21.      This Court has personal jurisdiction over Defendant because Xfinity is registered to do business with the Pennsylvania Department of State, is headquartered and has their principal place of business of and/or routinely conducts business in the Eastern District of Pennsylvania, has sufficient minimum contacts in the Commonwealth of Pennsylvania, has intentionally availed itself of this jurisdiction by marketing and/or selling products and/or services and/or by accepting and processing payments for those products and/or services within the Commonwealth of Pennsylvania.

22.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

**A.  The Data Breach**

23.      Xfinity began notifying its customers of the Data Breach on or around December 18, 2023. Plaintiff received an email notice from Xfinity on or around December 20, 2023.

24.     In its customer notifications sent to Plaintiff and Class Members, Xfinity described the circumstances surrounding the Data Breach.

25.     According to Xfinity, on October 10, 2023, one of Xfinity's software providers, Citrix, announced a vulnerability in one of its products used by Xfinity. At the time Citrix made this announcement, it released a patch to fix the vulnerability. Citrix issued additional mitigation guidance on October 23, 2023. However, Xfinity subsequently discovered that prior to mitigation, between October 16 and October 19, 2023, there was unauthorized access to Xfinity's internal systems that Xfinity concluded was a result of this vulnerability.

26.     According to Xfinity, on December 6, 2023, Xfinity concluded that the accessed PII included usernames and hashed passwords; for some customers, other information was also included, such as names, contact information, last four digits of social security numbers, dates of birth and/or secret questions and answers.

27.     However, Xfinity only began notifying affected customers on or around December 18, 2023, and reported to the Maine Attorney General's Office that approximately 35,879,455 customers' PII was affected in the Data Breach.

28.     The Data Breach occurred as a direct result of Defendant's failure to implement and follow basic security procedures, and its failure to follow its own policies, in order to protect its customers' PII.

29.     Like Plaintiff, the Class Members received similar notices informing them that their PII was exposed in the Data Breach.

**B. Defendant Knew the Risks of Storing Valuable PII and the Foreseeable Harm to Victims**

30.    At all relevant times, Defendant knew it was storing and permitting its internal networks and servers to transmit valuable, sensitive PII and that, as a result, Defendant's systems would be attractive targets for cybercriminals.

31.    Defendant also knew that any breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised, as well as intrusion into their PII.

32.    These risks are not merely theoretical; in recent years, numerous high-profile breaches have occurred at businesses such as T-Mobile, Equifax, Yahoo, Marriott, and many others.

33.    PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as a result of the "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[1]

34.    The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the United States.

35.    According to the Identity Theft Resource Center, in 2019, there were 1,473 reported data breaches in the United States, exposing 164 million sensitive records and 705 million "non-sensitive" records.[2]

---

[1] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.
[2] *Data Breach Reports: 2019 End of Year Report*, IDENTITY THEFT RESOURCE CENTER, at 2, *available at* https://notified.idtheftcenter.org/s/resource#annualReportSection.

36.     In tandem with the increase in data breaches, the rate of identity theft and the resulting losses has also increased over the past few years. For instance, in 2018, 14.4 million people were victims of some form of identity fraud, and 3.3 million people suffered unrecouped losses from identity theft, nearly three times as many as in 2016. And these out-of-pocket losses more than doubled from 2016 to $1.7 billion in 2018.[3]

37.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[4]

38.     Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

39.     Plaintiff was and is very careful about sharing her PII. Plaintiff took reasonable steps to maintain the confidentiality of her PII and relied on Defendant to keep her PII confidential

---

[3] Insurance Information Institute, *Facts + Statistics: Identity theft and cybercrime*, available at https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20(1).

[4] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/assets/gao-07-737.pdf.

and securely maintained, to use this information for related business purposes only, and to make only authorized disclosures of this information.

40.    Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

## C.    Defendant Failed to Comply with the FTC Act

41.    Defendant is prohibited by the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45 (Section 5 of the FTC Act), from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

42.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice that violates the FTC Act.

43.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

44.    In 2007, the FTC published guidelines establishing reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose

a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

45.     The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

46.     Defendant is aware of and failed to follow the FTC guidelines and failed to adequately secure PII.

47.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

48.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII, or to prevent the disclosure of such information to unauthorized individuals constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

49.     Defendant was at all times fully aware of their obligations to protect the PII of consumers because of its business of obtaining, collecting, and storing PII. Defendant was also aware of the significant repercussions that would result from their failure to do so.

**D.    Plaintiff and Class Members Suffered Damages**

50.     For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm in several ways.

Plaintiff and Class Members must now immediately devote time, energy, and money to: 1) closely monitor their account statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

51.    Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' PII has been diminished by its exposure in the Data Breach.

52.    As a result of Defendant's failures, Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their PII.

53.    From a recent study, 28% of consumers affected by a data breach become victims of identity fraud – this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[5]

54.    Plaintiff and the Class members have also been injured by Defendant's unauthorized disclosure of their confidential and private financial records and PII.

55.    Plaintiff and Class Members are also at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise

---

[5] *See* https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud.

and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect its customers' PII.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and (b)(3), individually and on behalf of the following Nationwide Class:

> All persons in the United States whose PII was compromised in Data
> Breach that Defendant announced on or about December 18, 2023
> (the "Class").

57.     Excluded from the Class is Defendant, its members, parents, subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

58.     **Numerosity**.  All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The class described above is so numerous that joinder of all individual members in one action would be impracticable.  While Plaintiff is informed and believes that there are likely tens of millions of members of the Class, the precise number of Class members is unknown to Plaintiff. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to, the files implicated in the Data Breach.

59.     **Commonality and Predominance**.  All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to:

a.       Whether Defendant had a duty to protect the PII of Plaintiff and Class Members;

b.       Whether Defendant had a duty to maintain the confidentiality of Plaintiff's and Class Members' PII;

c.       Whether Defendant breached their obligation to maintain Plaintiff's and the Class Members' PII in confidence;

d.       Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII, and breached its duties thereby;

e.       Whether Defendant failed to properly give notice pursuant to state and/or federal law;

f.       Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

g.       Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

60.    **Typicality**.  All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the Class Members.  The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same failure by Defendant to safeguard PII.  Plaintiff and Class Members were all customers of Defendant, each having their PII obtained by an unauthorized third party.

61.    **Adequacy of Representation**.  All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because her interests does not conflict with the interests of the other Class Members that Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation, including data breach

litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed.  Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

62.    **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

63.    **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

64.      Plaintiff reserves the right to modify, amend, or revise the foregoing class allegations and definitions prior to moving for class certification based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (By Plaintiff on behalf of the Class)

65.      Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

66.      Defendant owed a duty under common law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

67.      Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

68.      Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

69.      Indeed, Defendant, as a telecommunications company was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

70.     Defendant was subject to an "independent duty" between Plaintiff and Class Members and Defendant.

71.     Defendant violated their duties by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII; by failing to maintain the confidentiality of Plaintiff's and the Class Members' records; and by failing to provide timely notice of the breach of PII to Plaintiff and the Class.

72.     Defendant breached the duties owed to Plaintiff and Class Members and thus was negligent. Defendant breached these duties by, among other things:

a.      mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII;

b.      mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

c.      failing to design and implement information safeguards to control these risks;

d.      failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e.      failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f.      failing to detect the breach at the time it began or within a reasonable time thereafter; and

73.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised.

74.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries, including:

a.      Theft of their PII;

b.      Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c.      Costs associated with purchasing credit monitoring and identity theft protection services;

d.      Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.      Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.      The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.      Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.     Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;

i.     Loss of their privacy and confidentiality in their PII; and

j.     Loss of personal time spent carefully reviewing financial statements to check for charges for services not received.

75.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including actual, compensatory, punitive, and nominal damages, in an amount to be proven at trial.

76.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(By Plaintiff on behalf of the Class)**

77.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

78.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant or failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

79.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving PII of its customers.

80.    Plaintiff and members of the Class are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

81.    The harm that has occurred as a result of Defendant's conduct is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

82.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including actual, compensatory, punitive, and nominal damages, in an amount to be proven at trial.

83.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

84.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; and (iv) provide lifetime monitoring and identity theft insurance to all Class Members.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (By Plaintiff on behalf of the Class)

85.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

86.     Defendant required Plaintiff and Class Members to provide their PII as a condition for using their services.

87.     In doing so, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, keep such PII secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their PII had been breached, compromised, or stolen.

88.     When entering into these implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them of a data breach.

89.     Indeed, implicit in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class Members in its possession would be used to provide the agreed-upon services and that Defendant would take adequate measures to protect Plaintiff's and Class Members' PII and timely notify them in the event of a data breach.

90.     It is clear by these exchanges that the parties intended to enter into implied agreements supported by mutual assent. Plaintiff and Class Members would not have disclosed their PII to Defendant but for the prospect of Defendant's promise of services. Conversely, Defendant presumably would not have taken Plaintiff's and Class Members' PII if it did not intend to provide Plaintiff and Class Members services through Xfinity.

91.     Plaintiff and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII as promised, or provide timely notice of a data breach.

92.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

93.     Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

94.     As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including actual, compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(By Plaintiff on behalf of the Class)**

95.     Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

96.     Plaintiff and Class Members conferred a monetary benefit on Defendant when they paid for services from Defendant and/or its agents and in so doing also provided Defendant with their PII.

97.     In exchange, Plaintiff and Class Members expected to receive from Defendant the services that were the subject of the transactions and should have had their PII protected with adequate data security.

98.     Defendant appreciated the benefits that Plaintiff and Class Members conferred, and Defendant profited from these transactions and used Plaintiff's and Class Members' PII for business purposes.

99.     Defendant funds their data security measures from revenues derived from the payments made by and on behalf of Plaintiff and Class Members.

100.    Defendant, however, failed to secure Plaintiff's and Class Members' PII and therefore, did not provide adequate data security in return for the benefits Plaintiff and Class Members provided.

101.    Plaintiff and Class Members expected that Defendant would use a portion of that revenue to fund adequate data security practices.

102.    Defendant acquired Plaintiff's and Class Members' PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

103.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their PII, they would not have allowed their PII to be provided to Defendant.

104.    Defendant enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

105.    Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant increased its own profit at the expense of Plaintiff and Class Members by utilizing ineffective security measures.

106.    Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their PII.

107.    Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class Members, because Defendant failed to implement appropriate data security measures.

108.    Plaintiff and Class Members have no adequate remedy at law.

109.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class Members sustained damages as alleged herein and will continue to suffer damages as the result of Defendant's Data Breach.

110.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**FIFTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**28 U.S.C. §§ 2201, *et seq.***
**(By Plaintiff on behalf of the Class)**

111.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

112.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

113.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive personal information and whether Defendant is currently maintaining data

security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that Defendant's data security practices remain inadequate.

114.    Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

115.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant continues to owe a legal duty to secure customers' sensitive personal information, to timely notify customers of any data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information.

116.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive personal information.

117.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another data breach at Defendant occurs, Plaintiff and Class Members will not have an adequate remedy at law because not all of the resulting injuries are readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

118.    The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to Defendant if an injunction is issued. If another data breach occurs, Plaintiff and Class Members will likely be subjected to substantial risk of identity theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable

prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

119.    Issuance of the requested injunction will serve the public interest by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and the millions of customers whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated, prays for relief as follows:

a.    For an order certifying the Class defined above and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.    For actual, compensatory, punitive, and nominal damages, in amounts to be determined by the trier of fact;

d.    Declaratory and injunctive relief as described herein;

e.    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f.    Awarding pre-and-post-judgment interest on any amounts awarded; and

g.    Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: December 22, 2023          */s/Anthony M. Christina*

Ian W. Sloss (*pro hac* vice forthcoming)
Johnathan Seredynski (*pro hac* vice forthcoming)

**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Telephone: (203) 325-4491
Email: isloss@sgtlaw.com
Email: jseredynski@sgtlaw.com

Christian Levis (*pro hac* vice forthcoming)
Amanda G. Fiorilla (*pro hac* vice forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina
PA ID# 322528
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA
Telephone: (215) 399-4770
Email: achristina@lowey.com

*Attorneys for Plaintiff and the Proposed Class*